# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX HUERTA SUNIGA, | 1:09-cv-00132-OWW-DLB (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| JAMES D. HARTLEY, | [Doc. 1] |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation following his 1987 conviction for second degree murder. Petitioner is serving a sentence of fifteen years to life in prison with the possibility of parole.

In the instant petition, Petitioner does not challenge the constitutional validity of his criminal judgment; rather, he challenges the Board of Parole Hearings' (hereinafter "Board") 2006 decision finding him unsuitable for release on parole. He contends there was no evidence to support the finding that he is a current danger to the public if released.

On September 24, 2007, Petitioner filed a petition for writ of habeas corpus in the Tulare County Superior Court. Petitioner claimed that the Board's 2006 decision denying him parole violated his due process rights because there was no evidence of his current dangerousness to the

public and it violated his plea bargain. (Exhibits A & B, to Answer.) On August 29, 2007, the Superior Court denied the petition finding "there was more than enough evidence to justify the denial of petitioner's parole." (Exhibit B, at 5.)

Petitioner also filed petitions in the California Court of Appeal and California Supreme Court. (Exhibits C, D, E &F to Answer.) Both courts summarily denied the petitions. (Exhibits D & F, to Answer.)

Petitioner filed the instant federal petition for writ of habeas corpus on January 22, 2009. Respondent filed an answer to the petition on May 7, 2009, and Petitioner filed a traverse on June 3, 2009. (Court Docs. 15, 19.)

## STATEMENT OF FACTS[1,2]

On June 27, 1987, Carlos Juantes-the victim, Petitioner, his wife Eleanor, and some mutual friends spent part of the day at Reedley Beach. In the afternoon they returned to the apartment complex in Dinuba where they all lived, with the exception of Carlos Juantes, who was visiting a cousin. After returning to Dinuba, Petitioner and a friend left to pick up a motorcycle in Hanford. When Petitioner returned home he found his wife visiting at a neighbor's apartment. Carlos Juantes was also present at the apartment. Petitioner demanded to see his wife and accused her of having a relationship with Carlos. Petitioner left and returned with a shotgun. Petitioner and his wife then proceeded outside of the apartment to the parking lot. The two argued and Petitioner hit her in the back of the head with the gun, and told her "tell your boyfriend to come out if he's man enough." Petitioner then shot the gun in his wife's direction missing her but hitting a window of Juantes' car. Carlos came out of the apartment and attempted to take the shotgun from Petitioner. However, Petitioner pulled away from him and

---

[1] This information is derived from the transcript of the parole hearing which quoted from the Probation Officer's Report. (Transcript, at 9-12, Court Doc. 18.)

[2] On May 11, 2009, the Court directed Respondent to provide a copy of the transcript of Petitioner's 2006 Board hearing. (Court Doc. 16.) On June 3, 2009, Respondent submitted the copy of the transcript, however, he objects to this Court's review of it because Petitioner did not submit it with the state habeas petition and, thus, it was not part of the state court record. (Court Doc. 18.) However, pursuant to Rule 5(c) and Rule 7(a) of the Rules Governing Habeas Corpus Cases, this Court may consider transcripts of prior proceedings as well as expand the record to include additional relevant materials pertaining to the petition. Therefore, the Court recommends that Respondent's objection be overruled and will proceed to review the transcript of the hearing.

shot him in the chest at point blank range causing his death. Carlos fell to the ground and Petitioner pointed the shotgun muzzle near his head and asked his wife if she wanted him shot again. The victim's cousin began screaming and Petitioner pointed the gun at her and threatened to kill her if she did not "shut up." Petitioner then got on his motorcycle but his wife pushed him causing both to fall down. Petitioner's wife recovered the gun and fired it at the ground. Petitioner fled the area and was shortly apprehended by police. Petitioner told police "I hop[e he dies. He deserves to die for messing around with my wife."

With regard to Petitioner's version of the factual circumstances, Petitioner claimed he never accused his wife of having a relationship with Carlos. Petitioner stated that on the day of the commitment offense he was supposed to go to work, but instead went shopping with his wife and then to the river to drink with friends. After leaving the river, he went to pick up a motorcycle with the victim's cousin. They went to a bar and then to his uncle's house and returned home around 8:00 p.m. Petitioner wanted his wife to go with him to sell his shotgun to obtain some fun money. When she refused, he became angry because he did not get his own way and he was intoxicated. In an attempt to scare his wife, he fired the shotgun away from her. Petitioner indicated he did not realize that the gun fire hit the victim's car. Petitioner's wife became upset and she pushed him while he was sitting on his motorcycle causing it to fall. At that time, the victim came out of the apartment and proceeded toward Petitioner because he was angry about his damaged car. Petitioner felt threatened and shot Juantes causing his death. Petitioner stated that he did not remember the issue of jealousy and claimed it was caused only by his selfishness. (Court Doc. 18, Transcript, at 9-12.)

## DISCUSSION

I.   Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy,

3

521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), citing White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at

72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), cert. denied, 537 U.S. 859 (2002), rehearing denied, 537 U.S. 1149 (2003).

In this instance, the Court reviews the last reasoned decision of the Tulare County Superior Court which found that the record supported "that there were relevant facts upon which the Board of Prison Terms could and did base their decisions." (Exhibit B, to Answer.)

II. Review of Petition

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987);

see also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole," Id.; and 4) the decision of the Board must be supported by "some evidence" having an indicia of reliability. Superintendent, Mass. Correc. Inst. v. Hill, 472 U.S. 445, 455 (1985); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987).

"In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass, 461 F.3d at 1128. In determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Id. Rather, the Court must determine whether there is any evidence in the record that could support the conclusion of the disciplinary board. Id., *citing* Superintendent v. Hill, at 455-56. Although Hill involved the accumulation of good time credits, the same standard applies to parole, as both situations "directly affect the duration of the prison term." Id., *citing* Jancsek v. Oregon Bd. of Parole, 833 F.2d at 1390.

In making a determination whether an inmate is suitable for parole, the Board is guided by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.

6

(b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 Cal. Code Regs. §§ 2402(a) and (b).

In this case, with regard to the procedural protections outlined in Greenholtz, Petitioner was provided all that is required. Petitioner was given advance notice of the hearing, he was offered representation by counsel at the hearing, he was granted an opportunity to submit materials for the Board's consideration and an opportunity to be heard during the hearing, and he was provided a written decision explaining the reasons why parole was denied. See Court Doc. 18, Transcript.

The California Supreme Court clarified the standard of the review applicable to parole decisions by the Board or Governor in In re Lawrence, 44 Cal.4th 1181 (2008). The applicable standard "is whether some evidence supports the decision of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." Id. at 1212 (emphasis in original and citations omitted). As to the circumstances of the commitment offense, the Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.[3]

---

[3] To this end, the Court recognized that its prior determination of "a focus upon the egregiousness of the commitment offense to the exclusion of other relevant evidence has proved in practice to obscure the core statutory emphasis upon current dangerousness, the manner in which courts apply the some evidence standard in evaluating the evidentiary value of the gravity of the commitment offense requires some clarification." In re Shaputis, 44 Cal.4th 1241, 1254 (2008) (citing Lawrence, 44 Cal.4th at 1213-1214.)

7

1    At Petitioner's subsequent parole hearing in 2006, the Board found Petitioner unsuitable based on the circumstances of the commitment offense, multiple victims were attacked, very trivial motive in relation to the offense, prior record of criminal conduct and violence, failure to demonstrate evidence of positive change based on his misconduct during incarceration, and inconclusive psychological report.

With regard to the commitment offense, the Board found the commitment offense was carried out in a dispassionate and calculated manner and involved multiple victims.[4] The confrontation began when Petitioner got into an argument with his wife because she refused to leave the apartment complex with him. (Court Doc. 18, Transcript at 10, 56.) Petitioner fired the shotgun at his wife's direction missing her, but hitting victim, Mr. Juantes' vehicle. (Id. at 10, 56.) Petitioner then struck his wife with the butt of the shotgun resulting in her having to be hospitalized. (Id. at 10, 41.) Petitioner then shot Mr. Juantes at close range after he exited his apartment. (Id.) As the victim was lying on the ground, Petitioner proceeded to point the shotgun at his head and threatened to shoot him again. (Id. at 10-11, 56.) In addition, Petitioner threatened to kill, Ms. Caldera, who was at the scene and was screaming at him. (Id.) In light of these circumstances, some evidence supports the Board's finding that Petitioner committed the offense in a dispassionate and cruel manner and multiple victims were involved.

Although Petitioner claims that he felt intimidated by Mr. Juantes and the shooting was the result of self-defense, the Board found the evidence in the record contradicted such claim. A prisoner's credibility is a vital aspect of the Board's consideration of "all relevant, reliable information . . . [including a prisoner's] past and present attitude toward the crime, in rendering a

---

[4] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
   (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
   (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
   (C) The victim was abused, defiled or mutilated during or after the offense.
   (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
   (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

8

determination of whether the prisoner remains an unreasonable risk of danger to society if released. 15 Cal. Code Regs. § 2402(a), (b). During the 2006 hearing, Petitioner persisted that he felt threatened and intimidated by Mr. Juantes, and that is the reason for shooting him at close range. However, the Board pointed out that there was evidence that Petitioner made statements that he believed his wife was having an affair with the victim, and challenged him to a confrontation. (Court Doc. 18, Transcript at 17-18, 39-41, 45-48.) Petitioner had acknowledged at previous Board hearings that he was under the belief that his wife was having an affair with Mr. Juantes. The Board provided Petitioner with an opportunity to explain the discrepancies as well as to respond to the Board's concern regarding the discrepancies. (Id.) Because Petitioner failed to do so, the Board was legitimately concerned that Petitioner had not gained sufficient insight into the circumstances underlying the commitment offense and therefore remained a risk of danger to public safety if released. Lawrence, 44 Cal.4th at 1228; In re Shaputis, 44 Cal.4th 1241, 1246 (2008) (circumstances of commitment offense and inmate's current attitude toward his crime are, by statute, factors relevant to his suitability for parole). The Board also found the motive to be very trivial in relation to the offense. The Board's finding that the motive for the crime was trivial in relation to the offense is supported by the fact that the murder was apparently motivated by jealously.

The Board also found that Petitioner's previous criminal history was indicative of his unsuitability. 15 Cal. Code Regs. § 2402(c)(2). Petitioner's criminal history includes, among others, convictions for assault, battery, and brandishing a deadly weapon-pocket knife, and Petitioner failed to benefit from his previous grants of leniency. (Court Doc. 18, Transcript at 22-25, 56-57.) Thus, there is some evidence to support the Board's finding that Petitioner had an escalating pattern of criminal behavior and therefore continues to remain a risk to public safety.

The Board also found that Petitioner failed to demonstrate evidence of positive change, considering his institutional behavior which includes two serious CDCR 115 disciplinary reports, the most recent on April 4, 2004, for responsibility for count, and the other on February 19, 1994, for possession of paraphernalia-a saw blade. 15 Cal. Code Regs. § 2402(c)(6).

1         The Board also pointed out that the psychological report was inconclusive because the doctor did not assess Petitioner's level of risk as to average citizens in the free community, and instead compared him only to the other parolees. (Court Doc. 18, Transcript at 32, 57, 60.) The Board requested that a new evaluation be conducted before the next hearing to address this issue. (Id. at 60.) Therefore, this factor, considered along with the above-mentioned factors, constitute some evidence to support the Board's finding that the most recent psychological report was inconclusive as to Petitioner's ability to function within the free community without reoffending on parole.

        The Board also considered the factors in favor of suitability. 15 Cal. Code Regs. § 2402(c). The Board commended Petitioner for having numerous laudatory chronos, receiving his GED, participation in Alcoholics Anonymous and Narcotics Anonymous, self-help programming, Personal Growth Seminars, and vocational training in Auto Technology, Small Engine Repair, and Carpentry. (Id. at 59.) However, on balance, the Board found these positive factors did not outweigh the factors of unsuitability.

        In sum, this Court cannot conclude that the Board's denial of parole has resulted in a due process violation when considering, in combination, the circumstances of the commitment offense, prior criminal history, institutional misconduct, and inconclusive psychological report. Accordingly, the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.      The instant petition for writ of habeas corpus be DENIED; and
2.      The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate

| | |
|---|---|
| 1 | Judge's Findings and Recommendation." Replies to the objections shall be served and filed within |
| 2 | fourteen (14) days after service of the objections. The Court will then review the Magistrate |
| 3 | Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file |
| 4 | objections within the specified time may waive the right to appeal the District Court's order. |
| 5 | Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). |

IT IS SO ORDERED.

**Dated: February 18, 2010**      **/s/ Dennis L. Beck**
UNITED STATES MAGISTRATE JUDGE